## STATE OF CONNECTICUT *v.* ANTHONY OLIPHANT
## (AC 15393)

O'Connell, C. J., and Lavery and Schaller, Js.

Argued September 16—officially released December 9, 1997

*Paul R. Kraus,* special public defender, for the appellant (defendant).

*Rita M. Shair,* assistant state's attorney, with whom, on the brief, were *Michael Dearington,* state's attorney, and *Mary Elizabeth Baran,* assistant state's attorney, for the appellee (state).

SCHALLER, J. The defendant appeals from the judgment of conviction, rendered after a jury trial, of one count of larceny in the first degree in violation of General Statutes § 53a-122.[1] On appeal, the defendant claims that the trial court improperly (1) failed to conduct an adequate canvass of the defendant prior to accepting his waiver of the right to counsel, (2) denied the defendant the effective assistance of standby counsel, and (3) concluded that the evidence presented at trial was sufficient to prove the defendant's guilt beyond a reasonable doubt. We affirm the judgment of the trial court.

The jury reasonably could have found the following facts. The defendant, Anthony Oliphant, was the recipient of welfare assistance payments from the city of Hartford from May 10 through September 30, 1993. He was then declared ineligible because he failed to submit a case plan setting forth his specific needs, such as job training or substance abuse treatment. He later reapplied for benefits from Hartford, and his application was granted. He resumed receiving benefits from November 25, 1993, through June 30, 1994.

In July, 1993, the defendant applied for welfare benefits from the city of Meriden under the alias of Jerome Martin without informing the welfare office that he was

---

[1] General Statutes § 53a-122 (a) provides in relevant part: "A person is guilty of larceny in the first degree when he commits larceny as defined in section 53a-119 and . . . (4) the property is obtained by defrauding a public community, and the value of such property exceeds two thousand dollars."

The relevant portions of General Statutes § 53a-119 provide: "A person commits larceny when, with intent to deprive another of property or to appropriate the same to himself or a third person, he wrongfully takes, obtains or withholds such property from an owner. Larceny includes, but is not limited to . . . (6) Defrauding of public community. A person is guilty of defrauding a public community who (A) authorizes, certifies, attests or files a claim for benefits or reimbursement from a local, state or federal agency which he knows is false; or (B) knowingly accepts the benefits from a claim he knows is false . . . ."

simultaneously receiving benefits from Hartford under the name of Anthony Oliphant. The defendant provided documents that supported his application in the name of Jerome Martin. As a result, the defendant received welfare benefits from Meriden from July 23, 1993, through December 27, 1994. The defendant, therefore, received duplicate welfare benefits from Hartford and Meriden for two separate time periods: July 23 to September 30, 1993, and November 25, 1993, to June 30, 1994. The defendant received total benefits from Meriden in the amount of $5518.46, which formed the basis of the larceny charge.

At the defendant's arraignment, a public defender, Michael Moscowitz, was appointed to represent him at trial. Moscowitz had represented the defendant in two prior proceedings. On the first day of jury selection, the defendant expressed dissatisfaction with Moscowitz and requested a different public defender. The trial court denied that request. The defendant then expressed his desire to represent himself in this matter. The trial court then proceeded to question the defendant as to his understanding of the implications of his waiver of counsel pursuant to Practice Book § 961.[2]

---

[2] The following excerpt from the trial transcript reveals the extent of the trial court's canvass of the defendant.

"Mr. Moscowitz: Good afternoon, Your Honor. Your Honor, I would only indicate that I did have an opportunity to speak to Mr. Oliphant. Mr. Oliphant did represent to me that he does wish to represent himself. I did indicate to him that that is an option. I did indicate to him that I would be standby counsel. In light of that, I did also discuss with Mr. Oliphant possibly requiring a § 54-56d to determine Mr. Oliphant's competency. The only reason I move for that approach is because I don't know whether Mr. Oliphant appreciates this situation. His exposure in this matter being the fact that it is a larceny one is twenty years. He is already doing a sentence of fifteen months. He could, right now, have an exposure of twenty-one years and three months, which is an extensive period of incarceration, and I am not quite sure whether Mr. Oliphant appreciates this situation in light of what has transpired. For that reason, I am asking the court to consider a § 54-56d, even though my discussions with Mr. Oliphant indicate that he objects to that.

"The Court: Well, all right, let me address the issue of representation. I do not want Mr. Oliphant to represent himself. However, if you insist that

you want to do that, Mr. Oliphant, if you feel competent to do that, I'll defer to your wish and I will allow you to do that.

"Mr. Oliphant: Well—

"The Court: Let me just finish. Let me finish, please. You have a habit of interrupting, and I don't want you to do that. I don't want you to do that because I don't think it is in your best interest that you represent yourself. But in any event, if I allow it, and I'll hear you in just a moment. If I allow it, Mr. Moscowitz is going to remain in attendance should you need his counsel and advice. You don't have to seek it. You don't have to ask him any questions. But if you feel the need to do that, he'll be here under any circumstance available for that purpose. Now what do you have to say about representing yourself?

"Mr. Oliphant: I have no alternative, Your Honor. I asked that Mr. Moscowitz be removed from the last trial I had due to his ineffectiveness. If I can't have someone who [is] going to be effective for me, what choice do I have?

"The Court: Well, I am satisfied that Mr. Moscowitz provided you with effective assistance. He is going to remain as your attorney on this case. There is no issue as to that.

"Mr. Oliphant: Can I represent myself? You say you are satisfied. But that is not the question. I am not satisfied.

"The Court: No, no, I make the decision.

"Mr. Oliphant: You make the decisions, but I am not satisfied, sir. I am not satisfied.

"The Court: I am sitting up here and I make the decisions, and my decision is that Mr. Moscowitz will continue as your counsel. If not primarily so, then as in assistance to you if you are allowed to represent yourself. Do you still wish to represent yourself under those circumstances?

"Mr. Oliphant: Yes, Your Honor. Under those circumstances, I wish to represent myself. And with all due respect, Your Honor, I ask that you remove yourself from my case.

"The Court: Well, that motion is denied. Now, on the next, let me just understand one thing for sure now Mr. Oliphant. Mr. Moscowitz, in his remarks, referred to the exposure which you face in this matter. As I understand it, you are charged with larceny in the first degree. That is a class B felony, and exposes you to maximum penalties of up to twenty years, plus substantial fines.

"Mr. Oliphant: I understand that, Your Honor.

"The Court: I don't want you to proceed representing yourself unless you are convinced that is what you want to do notwithstanding this exposure.

"Mr. Oliphant: The only thing I am convinced of, Your Honor, to address your question, is that I seek to be weighed in an even balance, sir. That is all I seek is to be weighed in an even balance. And God may release my— nobody else does, you know. And I am not getting that from this court, Your Honor. This is the third trial with you, starting with a housing court issue, which you found against me. And the second time with the misdemeanor case, which you again found against me. And the third time, and

you know, the ante still keeps going up for me. And I am still getting hit off every time, you know. I had ineffective counsel both times.

"The Court: Well, that issue is moot because Mr. Moscowitz, as I said, afforded you independent counsel.

"Mr. Oliphant: Yeah, it's moot all right.

"The Court: And afforded you effective counsel and support throughout the trial that you refer to. And he will continue as your counsel in this case. At least to assist you as you deem necessary. So I am going to grant your request and allow you to represent yourself until such time as you indicate that you want Mr. Moscowitz to take over the defense, if that time comes. All right. Now, what about the motion for a competency examination. What do you say to that Mr. Oliphant?

"Mr. Oliphant: I waive it, Your Honor.

"The Court: Pardon me?

"Mr. Oliphant: I waive it.

"The Court: You waive it? What does that mean?

"Mr. Oliphant: No.

"The Court: You don't want it?

"Mr. Oliphant: Thank you.

"The Court: You feel yourself competent?

"Mr. Oliphant: I'm standing here aren't I?

"The Court: Well do you understand the nature of the proceedings against you?

"Mr. Oliphant: Oh, Your Honor, how well do I understand. I ain't hanging up yet.

"The Court: All right. And you feel that you can present your defense individually and, if need be, with whatever help you might seek from Mr. Moscowitz?

"Mr. Oliphant: No, I don't.

"The Court: You don't feel you can represent yourself?

"Mr. Oliphant: Not with him, no.

"The Court: Well he is going to stay here to assist you if you need it. If you don't need him or want him—

"Mr. Oliphant: Why him, Your Honor?

"The Court: It's up to you. If you don't want to use Mr. Moscowitz in any capacity, he will just remain in attendance.

"Mr. Oliphant: I have been seeking from this trial, from the beginning of this trial and the beginning of the last trial, to have him removed, Your Honor—

"The Court: The motion to disqualify Mr. Moscowitz is denied and I don't want to hear any more about it. Now we're on the question of your competency examination, as I understand your position, you object to any such examination, is that so?

"Mr. Oliphant: I don't know how to answer your question, Your Honor, without being in contempt it seems like.

"The Court: Well, do you feel you are competent to carry on your own defense?

I

The defendant first claims that his canvass by the trial court regarding his waiver of the right to counsel on the eve of trial was insufficient pursuant to Practice Book § 961.[3] A criminal defendant's right to counsel is a fundamental right guaranteed by both our federal and state constitutions. See *Gideon* v. *Wainwright*, 372 U.S. 335, 339–40, 83 S. Ct. 792, 9 L. Ed. 2d 799 (1963); *State* v. *Gethers*, 193 Conn. 526, 533, 480 A.2d 435 (1984). In addition, a criminal defendant enjoys the constitutional right to self-representation at trial, provided he knowingly and intelligently waives the right to counsel. *Faretta* v. *California*, 422 U.S. 806, 835, 95 S. Ct. 2525, 45 L. Ed. 2d 562 (1975); see also *State* v. *Gethers*, supra, 533, citing *Lyles* v. *Estelle*, 658 F.2d 1015, 1020 (5th Cir. 1981); see generally annot., 98 A.L.R.3d 13 (1980). The court in *Faretta* articulated the standard in the following manner: "When an accused manages his own

"Mr. Oliphant: I just explained that, Your Honor. Not with this man here, no sir.

"The Court: Well, then you just don't use Mr. Moscowitz then, if that is the way you feel.

"Mr. Oliphant: Well, who am I going to use then, Your Honor? I am not an attorney, Your Honor.

"The Court: You are not picking your public defender, Mr. Oliphant.

"Mr. Oliphant: I am not trying to pick my public defender.

"The Court: Well, you're not going to.

"Mr. Oliphant: I am asking for qualified legal counsel, that is all I am asking.

"The Court: Well you are not going to. You have Mr. Moscowitz who will remain.

"Mr. Oliphant: That's all I am asking for, as a right.

"The Court: The motion for a competency examination is denied. I think Mr. Oliphant is quite competent . . . to stand trial."

[3] It should be noted that, in his brief, the defendant argues that the trial court improperly failed to establish his competency in two respects: (1) competency to waive his right to counsel pursuant to Practice Book § 961, and (2) competency to stand trial pursuant to General Statutes § 54-56d. Because there is a presumption in favor of competency to stand trial and no specific evidence was advanced that supported the defendant's incompetency to stand trial pursuant to § 54-56d, we decline to review this claim. In addition, the defendant waived this issue at oral argument.

defense, he relinquishes, as a purely factual matter, many of the traditional benefits associated with the right to counsel. For this reason, in order to represent himself, the accused must 'knowingly and intelligently' forgo those relinquished benefits." *Faretta* v. *California*, supra, 835; see also *Johnson* v. *Zerbst*, 304 U.S. 458, 464–65, 58 S. Ct. 1019, 82 L. Ed. 1461 (1938).

Practice Book § 961 sets forth the criteria that must guide the trial court in ascertaining whether the waiver of counsel is made properly by the defendant.[4] Section 961 " 'was adopted in order to implement the right of a defendant in a criminal case to act as his own attorney in defending himself . . . .' " *State* v. *Townsend*, 211 Conn. 215, 219, 558 A.2d 669 (1989), quoting *State* v. *Gethers*, supra, 193 Conn. 532. "Some of the factors bearing on the defendant's capacity include age, education, mental health, prior experience with criminal trials and consultation with counsel prior to proceeding pro se, although none of these inquiries is a constitutional necessity. 2 W. LaFave & J. Israel, [Criminal Procedure (1984) § 11.5 (c)], p. 46. However, a defendant need not himself have the skill and experience of a lawyer in order competently and intelligently to choose self-representation . . . . *Faretta* v. *California*, supra, [422 U.S. 835]. Rather a record that affirmatively shows that

[4] Practice Book § 961 provides: "A defendant shall be permitted to waive his right to counsel and shall be permitted to represent himself at any stage of the proceedings, either prior to or following the appointment of counsel. A waiver will be accepted only after the judicial authority makes a thorough inquiry and is satisfied that the defendant:

"(1) Has been clearly advised of his right to the assistance of counsel, including his right to the assignment of counsel when he is so entitled;

"(2) Possesses the intelligence and capacity to appreciate the consequences of the decision to represent himself;

"(3) Comprehends the nature of the charges and proceedings, the range of permissible punishments, and any additional facts essential to a broad understanding of the case; and

"(4) Has been made aware of the dangers and disadvantages of self-representation."

[he] was literate, competent, and understanding, and that he was voluntarily exercising his informed free will sufficiently supports a waiver. Id.; [*State* v. *Gethers*, supra, 536]." (Internal quotation marks omitted.) *State* v. *Townsend*, supra, 221.

In this case, the defendant stated clearly on the record that he did not want to proceed with the public defender appointed by the court. Knowing that the court would not appoint another public defender, he preferred to represent himself. The trial court then questioned the defendant to ensure that he understood the consequences of his decision to waive his right to counsel. The trial court informed the defendant of the potential exposure that he faced in terms of imprisonment. The court also expressed, on the record, its reluctance to allow the defendant to proceed pro se in this matter, unless convinced that this was clearly what the defendant desired. The trial court then questioned the defendant further and, as a result, was satisfied that the defendant clearly wanted to proceed pro se.

While a review of the trial court's canvass may indicate that the defendant may have preferred to have a public defender other than Moscowitz, our law is clear that a criminal defendant does not have the right to have the public defender of his choice. *McKee* v. *Harris*, 649 F.2d 927, 931 (2d Cir. 1981), cert. denied, 456 U.S. 917, 102 S. Ct. 1773, 72 L. Ed. 2d 177 (1982); *State* v. *Nash*, 149 Conn. 655, 663, 183 A.2d 275, cert. denied, 371 U.S. 868, 83 S. Ct. 130, 9 L. Ed. 2d 104 (1962). In addition, our Supreme Court stated that the mere fact that the defendant would have preferred to retain private counsel of his choice, could he have afforded such counsel, does not make the waiver of a court-appointed attorney involuntary. *State* v. *Day*, 233 Conn. 813, 830, 661 A.2d 539 (1995). As long as the defendant clearly and unequivocally indicates that he wants to proceed pro se instead of proceeding with the public defender

appointed for him, his waiver of counsel is knowing and voluntary. Id., 829. In this case, the defendant made it clear that he did not want to proceed with Moscowitz and understood that a rejection of Moscowitz meant that he would be proceeding pro se. Therefore, the mere fact that he would have preferred to proceed with another attorney is irrelevant to whether the § 961 waiver of counsel was proper.

With respect to the defendant's intelligence and capacity to understand the consequences of his choice, the record reveals that the trial court was familiar with the defendant because, as the defendant himself stated on the record, the trial judge had presided over proceedings involving the defendant on two previous occasions.[5] The trial court, therefore, possessed knowledge of the defendant's intelligence and capacity to understand the proceedings even prior to conducting the § 961 canvass of the defendant. See *State* v. *Siano*, 20 Conn. App. 369, 375, 567 A.2d 1231 (1989), aff'd, 216 Conn. 273, 579 A.2d 79 (1990) (court may take judicial notice of facts available to trial court at time of trial). The record reveals that the defendant was familiar with legal proceedings generally and trial tactics specifically. In fact, immediately after the trial court's canvass, the defendant filed several pretrial motions with the court, demonstrating his familiarity with legal procedures and practices. As a result, the trial court was properly satisfied that the defendant's waiver of counsel was knowing and intelligent in conformity with § 961.

In *State* v. *Gethers*, supra, 193 Conn. 526, our Supreme Court noted that once there is a reasonable basis to believe that the requirements of § 961 have been satisfied, the failure to question the defendant formally concerning each particular element in § 961 is not fatal.

---

[5] The trial court stated in its memorandum of decision concerning the defendant's motion for allocution of sentencing that it had "presided at a misdemeanor criminal trial and an eviction proceeding, both involving the defendant," on prior dates during the term.

"Although a more formal inquiry involving specific consideration of each element of the rule is preferable, our principal concern is not form but substance. Even if there had been an omission, the constitutional right of the defendant to defend himself could not have been denied unless it were shown that his waiver of counsel was involuntary or uninformed." Id., 539.

We conclude that the defendant's responses to the trial court's questions during the canvass, under the circumstances of this case, were sufficient to satisfy the requirements of § 961. As a result, the trial court properly found that the defendant's waiver of counsel was knowingly and intelligently made.

II

The defendant next claims that the trial court denied him the right to the effective assistance of standby counsel and abused its discretion by denying his motion for a mistrial. In support of this claim, the defendant makes two assertions: (1) Practice Book §§ 962 through 964[6] unconstitutionally limit the role of standby counsel, and

---

[6] Practice Book § 962 provides: "—— Standby Counsel for Defendant Representing Himself"

Practice Book § 963 provides: "—— —— Appointment

"When a defendant has been permitted to proceed without the assistance of counsel, the judicial authority may appoint standby counsel, especially in cases expected to be long or complicated or in which there are multiple defendants. A public defender or special public defender may be appointed as standby counsel only if the defendant is indigent and qualifies for appointment of counsel under Gen. Stat. § 51-296, except that in extraordinary circumstances the judicial authority, in its discretion, may appoint a special public defender for a defendant who is not indigent."

Practice Book § 964 provides: "—— —— Role

"If requested to do so by the defendant, the standby counsel shall advise the defendant as to legal and procedural matters. If there is no objection by the defendant, such counsel may also call the judicial authority's attention to matters favorable to the defendant. Such counsel shall not interfere with the defendant's presentation of the case and may give advice only upon request."

(2) the performance of standby counsel in this case was ineffective.

We begin our analysis with the proposition that a defendant does not have a state or federal constitutional right to standby counsel. See *State* v. *Gethers*, 197 Conn. 369, 385–87, 497 A.2d 408 (1985). Once a defendant has properly embarked on the path of self-representation, his constitutional right to counsel ceases. *State* v. *Day*, supra, 233 Conn. 821. The defendant's claim that he was denied the effective assistance of counsel is without merit because after deciding to proceed pro se, he had no constitutional right to the effective assistance of counsel in any capacity. The language and application of Practice Book §§ 962 through 964 are based on United States Supreme Court precedent and, accordingly, meet constitutional standards. See *McKaskle* v. *Wiggins*, 465 U.S. 168, 177–79, 104 S. Ct. 944, 79 L. Ed. 2d 122 (1984); *Faretta* v. *California*, supra, 422 U.S. 806.

In addition, the usual context in which standby counsel has abridged a defendant's right to conduct the trial occurs when standby counsel is overly zealous and interferes with the defendant's ability to conduct his trial. See *McKaskle* v. *Wiggins*, supra, 465 U.S. 168. In this case, there is no evidence that standby counsel unduly interfered with the defendant's ability to conduct his trial.[7] In addition, the defendant relied on Moscowitz at several points during the trial regarding the

---

[7] The defendant points to one occurrence during the trial that he claims produced confusion regarding the role of standby counsel. This matter, however, was promptly resolved by the trial court. The following colloquy occurred immediately after standby counsel and the defendant made a confusing set of alternative objections regarding the admissibility of evidence.

"The Court: I think there is a feeling that an objection should be made by you Mr. Moscowitz. Can you indicate that to Mr. Oliphant? If you need some time to do that, I'll allow it, but I think this business of both of you hopping up and making the same objection, citing the same grounds that have already been ruled upon is highly improper, not consistent with the rules, and I don't want it to happen.

admissibility of evidence and trial tactics. There is no merit to the defendant's claim that standby counsel was ineffective in this case.

### III

The defendant finally claims that the evidence presented at trial was insufficient to prove his guilt beyond a reasonable doubt. Specifically, the defendant claims that there was insufficient evidence to prove the statutory requirement of the defendant's intent to deprive Meriden permanently of welfare benefits. He claims that because he informed Meriden, after the receipt of certain benefits, that he was in fact Anthony Oliphant, and not Jerome Martin as he had claimed, he lacked the specific intent to deprive Meriden permanently of welfare benefits received thereafter.

---

"Mr. Moscowitz: Your Honor, the court has made a suggestion that seems like a very good procedure, whereby I pass it on to Mr. Oliphant. Your Honor, just to prevent any if I want to, what I need is a technicality as to how I am going to do that. I would like to pass it on to Mr. Oliphant, but how do I do it in stopping the state from going on any further. Should I just indicate objection, or will the court wait?

"The Court: Well, when an offer is made, clearly, you need to confer with your client. Ask the court and I will allow you to do that.

"Mr. Moscowitz: And I appreciate that suggestion. It has been a little difficult for me to figure out what to do in that situation. Would the court just give me a minute to speak to Mr. Oliphant, would that be sufficient?

"The Court: Please don't take up the court's time with respect to what I have already ruled on.

"Mr. Moscowitz: No, no, no. I just want to know, in the future, because I know, I don't mean to anger the court on behalf of either Mr. Oliphant or myself, but I'm having a little problem with the technicality of relating this to Mr. Oliphant.

"The Court: Well, I understand and I have tried to be lenient about it.

"Mr. Moscowitz: And the court has.

"The Court: But I can't, I just can't allow both of you to argue about the same issue, almost simultaneously. To answer your question, yes, you may confer with Mr. Oliphant right here and now, if you wish.

"Mr. Moscowitz: I don't need to do it now, but in the future if it arises, could I just ask the court if it would give me a moment to talk to Mr. Oliphant?

"The Court: You may certainly do that. And I am quite sure I will allow that."

"When we are called on to review a sufficiency of the evidence claim, we impose a two part analysis. We first construe the evidence in the light most favorable to sustaining the verdict. *State* v. *Salz*, 226 Conn. 20, 31, 627 A.2d 862 (1993); *State* v. *Rivera*, 32 Conn. App. 193, 200–201, 628 A.2d 996, cert. denied, 227 Conn. 920, 632 A.2d 698 (1993); *State* v. *Hooks*, 30 Conn. App. 232, 238, 619 A.2d 1151, cert. denied, 225 Conn. 915, 623 A.2d 1025 (1993). We next determine whether, from that evidence and all the reasonable inferences that flow from the evidence, a trier of fact could reasonably find that the defendant was guilty beyond a reasonable doubt. *State* v. *Salz*, [supra, 31]; *State* v. *Rivera*, supra [200–201].

"It is the sole right of the jury as the trier of the facts to draw all reasonable and logical inferences from the facts as it finds them to exist. . . . It is also the absolute right and responsibility of the jury to weigh conflicting evidence and to determine the credibility of the witnesses. . . . The test for determining whether the evidence is sufficient to sustain a verdict is thus whether the [trier of fact] could have reasonably concluded, upon the facts established and the reasonable inferences drawn therefrom, that the cumulative effect of the evidence was sufficient to justify the verdict of guilty beyond a reasonable doubt." (Citations omitted; internal quotation marks omitted.) *State* v. *Reddick*, 33 Conn. App. 311, 332–33, 635 A.2d 848 (1993), cert. denied, 228 Conn. 924, 638 A.2d 38 (1994); *State* v. *Ketchum*, 45 Conn. App. 270, 280–81, 696 A.2d 987, cert. denied, 242 Conn. 910, 697 A.2d 368 (1997).

While the defendant claims that he disclosed to Meriden welfare officials that he was actually Anthony Oliphant and not Jerome Martin as he had claimed, there was testimony at trial to the contrary. This testimony revealed that the defendant consistently referred to himself as Jerome Martin and never corrected Meriden

officials when they referred to him as Jerome Martin. The jury apparently credited this testimony and did not find the defendant's claim to the contrary credible. We cannot disturb this finding as clearly erroneous under the circumstances. Therefore, the defendant's claim that there was insufficient evidence to prove his guilt beyond a reasonable doubt is without merit.

The judgment is affirmed.

In this opinion the other judges concurred.