# STATE OF CONNECTICUT *v.* JEFFREY SWEENEY
## (AC 27449)

DiPentima, McLachlan and Peters, Js.

Argued September 6—officially released November 27, 2007

*Thomas G. Wolff*, for the appellant (defendant).

*Melissa L. Streeto*, assistant state's attorney, with whom, on the brief, were *David I. Cohen*, state's attorney, and *Nancy Dolinsky*, senior assistant state's attorney, for the appellee (state).

*Opinion*

DiPENTIMA, J. The defendant, Jeffrey Sweeney, appeals from the judgment of conviction, rendered after a jury trial, of criminal trespass in the third degree in violation of General Statutes § 53a-109 (a) (1). On

appeal, the defendant claims that the court improperly (1) admitted testimony and physical evidence concerning a box cutter,[1] (2) admitted evidence of his prior, uncharged misconduct, (3) excluded evidence that he sought to admit to impeach a witness' credibility, (4) charged the jury and (5) allowed the state to comment on a missing witness during final argument. We affirm the judgment of the trial court.

The jury reasonably could have found the following facts. The defendant met Jill Romer at the company where they both worked, and the two dated off and on from 2000 to 2004. During that period, the defendant visited Romer on several occasions at her condominium apartment at 99 Prospect Street in Stamford. Romer's apartment building has a front entrance that opens into a vestibule where there is an intercom system. Because the doors leading from the vestibule into the lobby are locked, a person who does not have a key to the doors can use the intercom system to call a resident's apartment in order to gain entry. The resident can speak to the person through the system's speaker and remotely trigger the doors to unlock.

On December 17, 2004, the defendant telephoned Romer and said he wanted to bring her a gift. There were several calls back and forth between Romer and the defendant, during which Romer told the defendant not to come over and that she did not want anything from him. Disregarding Romer's request, the defendant went to the building and used the intercom system to call Romer to be let into the building. Romer picked up the telephone and, without triggering the door to unlock, loudly stated that she was calling the police.

---

[1] The state referred to the item, a knife, as a "box cutter," but the defense referred to the item as a "utility knife." We refer to the item as a box cutter for purposes of our discussion.

While the defendant was in the vestibule, a woman in the lobby recognized him and let him into the building. The defendant proceeded up to the seventh floor where Romer's apartment was located and knocked on the door more than once. When Romer did not respond, the defendant used his cellular telephone to call Romer, but the line was busy. After hearing the defendant knocking on the door, Romer called the police.

The police came up to the seventh floor where they saw the defendant standing outside the apartment. Because they had received information from the police dispatcher concerning a prior incident involving a box cutter, the police patted down the defendant for weapons. They found a box cutter in the breast pocket of the defendant's jacket. The police then spoke with Romer, whom they described as visibly shaken. The police arrested the defendant.

The defendant was charged with one count of criminal trespass in the third degree and one count of disorderly conduct in violation of General Statutes § 53a-182 (a) (2). The jury found the defendant guilty of criminal trespass in the third degree and not guilty of disorderly conduct. The defendant was sentenced to ninety days incarceration, execution suspended, and one year of probation. The conditions of probation were that the defendant could not have contact with, threaten or be violent toward Romer and that he had to stay away from 99 Prospect Street. This appeal followed. Additional facts will be set forth as necessary.

I

The defendant's first claim is that the court abused its discretion by admitting testimony and physical evidence concerning the box cutter. Specifically, the defendant claims that (1) the testimony was inadmissible hearsay, (2) both the testimony and physical evidence were irrelevant and (3) both the testimony and physical

evidence were more prejudicial than probative. We disagree.

The following additional facts are necessary for the resolution of the defendant's claims. During the trial, Todd J. Lobraico, a Stamford police officer, testified that on December 17, 2004, he responded to a complaint about a former boyfriend who would not leave the outside of an apartment at 99 Prospect Street. Over the objections of the defendant on the grounds of hearsay and relevance, the court allowed the state to elicit testimony from Lobraico that the police dispatcher told him that there had been a prior incident between Romer and the defendant involving a box cutter.[2] Lobraico testified that as a result of this information, he handcuffed the defendant and patted him down for weapons in the hallway outside Romer's apartment and that during the patdown, he found a box cutter in the defendant's left breast jacket pocket. Later in the trial, the state offered the box cutter into evidence, to which the defendant objected as irrelevant and prejudicial. The court overruled the objection.[3]

---

[2] The following colloquy took place regarding this matter when Lobraico testified:

"[The Prosecutor]: And how were you brought into the case?

"[The Witness]: We were dispatched by our dispatch center to 99 Prospect Street, apartment 7 H, on a disturbance call for [an] ex-boyfriend who would not leave an apartment—the outside of the apartment. And the dispatch relayed to us that there were prior—

"[Defense Counsel]: I am going to object to whatever else the dispatcher related. He has already said what the call was and what he responded to. That's hearsay.

"The Court: It's preliminary. I overrule the objection.

"[The Prosecutor]: Did the dispatch tell you anything for your safety?

"[The Witness]: Yes, they did.

"[Defense Counsel]: Objection, Your Honor. It's irrelevant.

"[The Prosecutor]: It's not irrelevant.

"The Court: He was acting pursuant to—he was acting following the dispatcher's advice. I'll overrule the objection."

[3] The following colloquy took place concerning the introduction of the box cutter into evidence:

"[The Prosecutor]: I'd like to offer it into evidence, Your Honor.

As an initial matter, we set forth the applicable standard of review. As our Supreme Court recently clarified, the standard of review for an evidentiary ruling is predicated on the nature of the ruling at issue within the context of the case: "To the extent a trial court's admission of evidence is based on an interpretation of the Code of Evidence, our standard of review is plenary. For example, whether a challenged statement properly may be classified as hearsay and whether a hearsay exception properly is identified are legal questions demanding plenary review. . . . We review the trial court's decision to admit evidence, if premised on a correct view of the law, however, for an abuse of discretion. . . . In other words, only after a trial court has made the legal determination that a particular statement is or is not hearsay, or is subject to a hearsay exception, is it vested with the discretion to admit or to bar the evidence based upon relevancy, prejudice, or other legally appropriate grounds related to the rule of evidence under which admission is being sought." (Citations omitted.) *State* v. *Saucier*, 283 Conn. 207, 218–19, 926 A.2d 633 (2007).

## A

The defendant claims that Lobraico's testimony about what the dispatcher told him was hearsay and thus inadmissible. The state argues that the testimony regarding the dispatcher's statements was not hearsay because it was offered not for its truth but to show the effect of the statement on Lobraico. We agree with the state.

"An out-of-court statement used to prove the truth of the matter asserted is hearsay and is generally inadmissible unless an exception applies." (Internal quotation marks omitted.) *State* v. *Owen*, 101 Conn. App. 40,

---

"[Defense Counsel]: I object to it, Your Honor. It's irrelevant. There is no charge here of possession of a weapon or any other crime besides the one that the state has charged. I think it's prejudicial.

42, 919 A.2d 1049, cert. denied, 283 Conn. 902, 926 A.2d 671 (2007). *"Statements of declarants offered to show their effect on the listener, not for the truth of the contents of the statements, are not hearsay and are admissible.* See *State* v. *Hull,* 210 Conn. 481, 499, 556 A.2d 154 (1989) (exclusion from hearsay includes utterances admitted to show their effect on the hearer); see also *State* v. *Cruz,* 212 Conn. 351, 356, 562 A.2d 1071 (1989) (An out-of-court statement is hearsay when it is offered to establish the truth of the matters contained therein. . . . A statement offered solely to show its effect upon the hearer [however] is not hearsay. . . .) . . . ." (Citations omitted; emphasis added; internal quotation marks omitted.) *Dinan* v. *Marchand,* 279 Conn. 558, 572, 903 A.2d 201 (2006).

Lobraico's testimony regarding what the dispatcher told him about the box cutter when he was responding to the dispatch was offered to show its effect on Lobraico because it tended to explain why he took the precautions he did when he encountered the defendant in the hallway outside the apartment. Lobraico testified that it was because of this information that he handcuffed the defendant and patted him down for weapons, which was when he discovered the box cutter in the defendant's pocket. Because we conclude the statement was not hearsay, the claim fails.

B

The defendant further objects to Lobraico's testimony and the admission of the physical evidence, the box cutter, on the basis of lack of relevance. The defendant claims that the testimony and the box cutter were irrelevant to both of the crimes with which he was charged. The state argues that the testimony regarding the box cutter was relevant to proving the mens rea

---

"The Court: Well, there was testimony that apparently he was searched, and they found it in the upper pocket. I'll overrule the objection."

element of the disorderly conduct charge. We agree with the state.

" 'Relevant evidence' means evidence having any tendency to make the existence of any fact that is material to the determination of the proceeding more probable or less probable than it would be without the evidence." Conn. Code Evid. § 4-1. "The determination of whether a matter is relevant or collateral . . . generally rests within the sound discretion of the trial court." (Internal quotation marks omitted.) *State* v. *Reyes*, 81 Conn. App. 612, 619, 841 A.2d 237 (2004).

"A person is guilty of disorderly conduct when, with intent to cause inconvenience, annoyance or alarm, or recklessly creating a risk thereof, such person . . . (2) by offensive or disorderly conduct, annoys or interferes with another person . . . ." General Statutes § 53a-182 (a). According to the amended long form information, the state charged the defendant with the mens rea of recklessness. "A person acts 'recklessly' with respect to a result or to a circumstance described by a statute defining an offense when he is aware of and consciously disregards a substantial and unjustifiable risk that such result will occur or that such circumstance exists. . . ." General Statutes § 53a-3 (13). The state's theory of the case for this charge was that by bringing a box cutter to Romer's apartment, the defendant recklessly created a risk of causing her alarm or annoyance. Because the testimony and physical evidence were relevant to the charge of disorderly conduct, we conclude that it was within the court's discretion to admit the testimony and evidence on this basis.

C

Finally, with regard to the testimony and physical evidence concerning the box cutter, we address the defendant's claim that the evidence was more prejudicial than probative. "Our Supreme Court has outlined

four situations in which prejudice to the defendant could outweigh the probative value of evidence. These are: (1) where the facts offered may unduly arouse the jury's emotions, hostility or sympathy, (2) where the proof and answering evidence it provokes may create a side issue that will unduly distract the jury from the main issues, (3) where the evidence offered and the counterproof will consume an undue amount of time, and (4) where the defendant, having no reasonable ground to anticipate the evidence, is unfairly surprised and unprepared to meet it." (Internal quotation marks omitted.) *State* v. *Harvey*, 77 Conn. App. 225, 233, 822 A.2d 360, cert. denied, 265 Conn. 906, 831 A.2d 252 (2003). The defendant argues that the evidence regarding the box cutter created a side issue that confused the main issues in the case and that this evidence unfairly portrayed him as a violent person. We disagree.

As discussed, the evidence regarding the box cutter was not a side issue because the state was offering the evidence to prove one of the elements of the crime of disorderly conduct. The evidence also was not unduly prejudicial to the defendant. "Of course, [a]ll adverse evidence is damaging to one's case, but it is inadmissible only if it creates undue prejudice so that it threatens an injustice were it to be admitted. . . . The test for determining whether evidence is unduly prejudicial is not whether it is damaging to the defendant but whether it will improperly arouse the emotions of the jury." (Citation omitted; internal quotation marks omitted.) *State* v. *Copas*, 252 Conn. 318, 329–30, 746 A.2d 761 (2000). "The trial court's discretionary determination that the probative value of evidence is not outweighed by its prejudicial effect will not be disturbed on appeal unless a clear abuse of discretion is shown. . . . We note that [b]ecause of the difficulties inherent in this balancing process . . . every reasonable presumption should be given in favor of the trial court's ruling."

(Citations omitted; internal quotation marks omitted.) *State* v. *Woodson*, 227 Conn. 1, 17, 629 A.2d 386 (1993). We have reviewed the record, and we conclude that the court's determination that the evidence was more probative than prejudicial was not an abuse of discretion. Furthermore, we note that the jury found the defendant not guilty of the charge of disorderly conduct, the charge for which the evidence was introduced. Thus, it does not appear that the evidence improperly aroused the jury's emotions or hostility.

## II

The defendant's second claim is that the court abused its discretion in permitting Romer to testify during rebuttal that the defendant had threatened her with a box cutter several days before the charged crimes occurred. The defendant argues that this was an impermissible use of extrinsic evidence to impeach his credibility on a matter of uncharged misconduct. We disagree.[4]

Prior to the start of the trial, the state filed a notice of uncharged misconduct regarding an incident about six days prior to December 17, 2004, during which,

[4] The state argues that we should not review this claim because the defendant is not aggrieved. "[P]roof of aggrievement is . . . an essential prerequisite to the court's jurisdiction of the subject matter of the appeal. . . . Ordinarily, a party that prevails in the trial court is not aggrieved." (Internal quotation marks omitted.) *State* v. *Sanders*, 86 Conn. App. 757, 763–64, 862 A.2d 857 (2005). The state contends that because the defendant was acquitted of the disorderly conduct charge, he is not aggrieved. "The test of aggrievement is whether a party claiming aggrievement can demonstrate a specific personal and legal interest in the subject matter of the court's decision and whether that interest has been specially and injuriously affected by the decision." *State* v. *Talton*, 209 Conn. 133, 137, 547 A.2d 543 (1988). The defendant did not prevail on both charges, however, and thus is still aggrieved on the charge of criminal trespass. Because there was no limiting instruction to the jury regarding the use of this testimony only for the charge of disorderly conduct, we do not find the state's argument persuasive on the issue of aggrievement. Therefore, we conclude that we have jurisdiction over this claim.

Romer claimed, the defendant threatened her with a box cutter. Initially, the court disallowed this prior uncharged misconduct evidence. During its case-in-chief, the state introduced evidence through Lobraico's testimony that a box cutter was found on the defendant's person when the police arrived in the hallway outside Romer's apartment. The defendant testified that he used the box cutter for renovations he was doing at his home on the day of the incident and did not realize he had it with him when he went to Romer's building. When asked if he had ever brought the box cutter to Romer's apartment before December 17, 2004, he testified that he had brought it there to install a lighting fixture. On cross-examination, the defendant denied ever threatening Romer with a box cutter.

The state then sought to introduce rebuttal evidence, through Romer's testimony, that several days before the incident at issue in this case, the defendant had brought a box cutter to Romer's apartment and threatened her with it. The state argued that the defendant had opened the door to questioning about that event because he had testified that he had used the box cutter for lawful purposes. The court allowed Romer to testify that the defendant had threatened her with a box cutter during the prior incident.

"The admission of rebuttal evidence ordinarily is within the sound discretion of the trial court. In considering whether a trial court has abused its discretion, appellate courts view such a trial court ruling by making every reasonable presumption in favor of the decision of the trial court." *Outdoor Development Corp.* v. *Mihalov*, 59 Conn. App. 175, 183, 756 A.2d 293 (2000). "Ideally, rebuttal evidence is that which refutes the evidence presented by the defense, rather than that which merely bolsters the state's case . . . . When a defendant offers evidence in his defense, it is probative to offer evidence that contradicts his testimony." (Citation

omitted; internal quotation marks omitted.) *State* v. *Williamson*, 206 Conn. 685, 698, 539 A.2d 561 (1988).

The defendant is correct that extrinsic evidence cannot be used to impeach the credibility of a witness.[5] That was not the case in this situation, however. As discussed, the state argues that the defendant's possession of a box cutter was relevant to the mens rea element of the disorderly conduct charge; the state also argues that the testimony regarding the prior incident involving the box cutter pertains to that element because it explains the significance of the box cutter. Romer's testimony was not offered to impeach the defendant's credibility generally, but rather to directly refute his testimony: he said that he did not do something, and she said that he did. Certainly, credibility was an issue in this case, but the court, in overruling the defendant's objection to the testimony, correctly differentiated the situation in this case from situations involving extrinsic evidence by noting that the other situations involved evidence regarding collateral matters. See *State* v. *Chance*, 236 Conn. 31, 59–61, 671 A.2d 323 (1996). As Romer's testimony pertained to an element of the charged conduct that the state was trying to prove, it was not a collateral matter. Therefore, the court did not abuse its discretion in permitting Romer to testify about the prior incident involving a box cutter on rebuttal.

### III

The defendant's third claim is that the court improperly sustained the state's objection to evidence that the defendant sought to admit for the purpose of impeaching Romer's credibility. We disagree.

---

[5] The defendant bases his claim on § 6-6 (b) (2) of the Code of Evidence, which states that "[s]pecific instances of the conduct of a witness, for the purpose of impeaching the witness' credibility under subdivision (1), may not be proved by extrinsic evidence."

"A witness may be asked, in good faith, about specific instances of conduct of the witness, if probative of the witness' character for untruthfulness." Conn. Code Evid. § 6-6 (b) (1). "The proffering party bears the burden of establishing the relevance of the offered testimony. Unless a proper foundation is established, the evidence is irrelevant." *State* v. *Beliveau*, 237 Conn. 576, 586, 678 A.2d 924 (1996). "Whether an adequate foundation has been laid is a matter within the discretion of the court." Conn. Code Evid. § 6-6, comment (a); see, e.g., *State* v. *Gould*, 241 Conn. 1, 19, 695 A.2d 1022 (1997).

Twice during the trial, the defendant attempted to impeach Romer's credibility by questioning her about a letter she had received from a management company of the building in which her mother used to live; the letter was a request for her to return a key that she allegedly was using improperly to enter the building in order to use its exercise room. The defendant argues that Romer's use of the key under the false pretenses of being a guest pertained to Romer's truthfulness. The defendant, however, failed to lay a foundation for this evidence at trial. Thus, without a foundation, the evidence was irrelevant, and "[e]vidence that is not relevant is inadmissible." Conn. Code Evid. § 4-2. We conclude that the court did not abuse its discretion.

IV

The defendant's fourth claim is that the court improperly charged the jury regarding the authorized methods of entry into the building. Specifically, the defendant claims that when the court gave its instructions on the charge of criminal trespass, it, in effect, eliminated his affirmative defense that he reasonably believed he was licensed to enter the building and, therefore, the court misled the jury. We disagree.

"When reviewing [a] challenged jury instruction . . . we must adhere to the well settled rule that a charge to the jury is to be considered in its entirety, read as a whole, and judged by its total effect rather than by its individual component parts. . . . [T]he test of a court's charge is not whether it is as accurate upon legal principles as the opinions of a court of last resort but whether it fairly presents the case to the jury in such a way that injustice is not done to either party under the established rules of law. . . . As long as [the instructions] are correct in law, adapted to the issues and sufficient for the guidance of the jury . . . we will not view the instructions as improper." (Internal quotation marks omitted.) *State* v. *Howard*, 88 Conn. App. 404, 411–12, 870 A.2d 8, cert. denied, 275 Conn. 917, 883 A.2d 1250 (2005).

In the present case, the court instructed the jury on the essential elements of criminal trespass in the third degree and the affirmative defense to the charge. The defendant did not challenge the court's charge with respect to the recitation of the elements of criminal trespass or the explanation of the affirmative defense. Rather, the defendant took exception to the court's discussion of the evidence regarding the means of entering the building. Although the defendant agreed with the two means described by the court, he disagreed that those were the only two means by which he legally could enter the building. In an effort to address the concern raised by the defendant, the court brought the jury back into the courtroom after it had been excused and described a third way that a person could enter the building without violating the criminal trespass statute.[6] The defendant did not disagree with the court's description of the additional means to enter the building legally,

---

[6] The court charged the jury: "[T]here are three methods of entry. Either you have a key or you are allowed in by the occupant in the apartment or you're going in in the company of someone who was authorized to let you in."

but he was concerned that the instructions still excluded the possibility that there was another way to enter the building legally and thus eliminated his affirmative defense.[7] The defendant argues that the jury possibly could have been misled to conclude that he could not prevail on his affirmative defense under any circumstances because his method of entry was not one of the three legal methods described in the court's jury instructions. The court's charge, however, when read as a whole, did not mislead the jury; the instructions were legally correct, adapted to the issues of this case and sufficient for the guidance of the jury. We conclude that the court properly instructed the jury.

V

The defendant's final claim is that the court improperly allowed the state to comment on a missing witness during final argument. We disagree.

"In general, the scope of final argument lies within the sound discretion of the court . . . subject to appropriate constitutional limitations. . . . It is within the discretion of the trial court to limit the scope of final argument to prevent comment on facts that are not properly in evidence, to prevent the jury from considering matters in the realm of speculation and to prevent the jury from being influenced by improper matter that might prejudice its deliberations." (Internal quotation marks omitted.) *State* v. *Rios*, 74 Conn. App. 110, 119, 810 A.2d 812 (2002), cert. denied, 262 Conn. 945, 815 A.2d 677 (2003).

---

[7] "It shall be an affirmative defense to prosecution for criminal trespass that . . . (3) the actor reasonably believed that the owner of the premises, or a person empowered to license access thereto, would have licensed him to enter or remain, or that he was licensed to do so." General Statutes § 53a-110. The defendant testified that he entered the building when a resident of the building who recognized him opened the door for him; he argues that he reasonably believed, on the basis of his prior visits to the building and the resident's allowing him to enter, that he was licensed to enter the building by the resident who let him in.

During the trial, the defendant testified that on December 17, 2004, a female resident let him into the building. The defendant described this person in detail and stated that he had seen her before at the building on several occasions, but he only knew her first name. On cross-examination, the state questioned him about whether he ever had been able to locate this woman. The defendant stated that he had not tried to locate her, but he believed that his attorney had made some attempts to locate her. In closing argument, the state did not mention the fact that the defendant did not produce the woman who let him into the building as a witness or introduce evidence that this woman was unavailable to testify. During final argument,[8] however, the state did discuss this aspect of the defendant's case by referring to this woman as a "mystery woman who supposedly let the defendant in" and by questioning where she was.[9]

The defendant argues, citing *State* v. *Malave*, 250 Conn. 722, 737 A.2d 442 (1999) (en banc), cert. denied, 528 U.S. 1170, 120 S. Ct. 1195, 145 L. Ed. 2d 1099 (2000), that the court improperly allowed the state's discussion of the missing witness because the state failed to provide a factual or evidentiary foundation from which to infer a weakness in the defendant's case. "In *Malave*, our Supreme Court abandoned, in criminal cases, the [rule of *Secondino* v. *New Haven Gas Co.*, 147 Conn. 672, 165 A.2d 598 (1960)], also known as the missing witness rule, which sanctioned, under certain circumstances, a jury instruction that an adverse inference

---

[8] See Practice Book § 42-35 (4).

[9] The state maintains that this was in response to the defendant's closing argument in which the defendant emphasized that the defendant was let into the building by an unidentified person as part of his affirmative defense to criminal trespass; however, although we were provided with transcripts of the state's closing arguments, we do not have the transcript of the defendant's closing argument and, thus, cannot comment on what was stated by the defense.

may be drawn from the failure of a party to produce a witness. Although our Supreme Court abandoned the *Secondino* rule, it did not intend to 'prohibit counsel from making appropriate comment, in closing arguments, about the absence of a particular witness, insofar as that witness' absence may reflect on the weakness of the opposing party's case.' [*State* v. *Malave*, supra], 739. Comments in closing argument that do 'not directly exhort the jury to draw an adverse inference by virtue of the witness' absence' do not necessarily fall under the ambit of *Secondino*; id.; and accordingly are not forbidden by *Malave*. Our Supreme Court further provided that '[o]f course, the trial court retains wide latitude to permit or preclude such a comment, and may, in its discretion, allow a party to adduce additional evidence relative to the missing witness issue.'" *State* v. *Graham*, 67 Conn. App. 45, 48–49, 787 A.2d 11 (2001), cert. denied, 259 Conn. 911, 789 A.2d 996 (2002). Furthermore, "[c]ounsel may comment [in closing argument] upon facts properly in evidence and upon *reasonable* inferences to be drawn from them. . . . Counsel may not, however, comment on or suggest [in closing argument] an inference from facts not in evidence. . . . Similarly, a party cannot merely comment on the failure of the opposing party to present a witness without first providing a factual or evidentiary foundation from which to infer a weakness in the opposing party's case." (Citation omitted; emphasis in original; internal quotation marks omitted.) Id., 49–50.

The state provided an evidentiary foundation from which to infer a weakness in the opposing party's case by questioning the defendant on cross-examination about whether any attempt was made to find the resident who he stated had let him into the building. The facts concerning the resident were in evidence properly, and the state was permitted to comment on the facts and any reasonable inferences that could be drawn from

them. Furthermore, the defendant acknowledges that the state provided proper advanced notice that it sought to comment on the missing witness, as required under *Malave*. See *State* v. *Malave*, supra, 250 Conn. 740. Thus, we conclude that it was within the court's discretion to allow the state to comment on the missing witness during closing argument.

The judgment is affirmed.

In this opinion the other judges concurred.