******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

STATE OF CONNECTICUT *v.* JASON M. DAY
(AC 36383)

DiPentima, C. J., and Beach and Sheldon, Js.

*Argued December 14, 2015—officially released April 26, 2016*

(Appeal from Superior Court, judicial district of
Tolland, Mullarkey, J.)

*Jason M. Day*, self-represented, the appellant (defendant).

*Lisa A. Riggione*, senior assistant state's attorney, with whom, on the brief, were *Matthew C. Gedansky*, state's attorney, and *Charles W. Johnson*, assistant state's attorney, for the appellee (state).

*Opinion*

BEACH, J. The self-represented defendant, Jason M. Day, appeals from the judgment of conviction, rendered after a jury trial, of assault of a correctional officer in violation of General Statutes § 53a-167c (a) (5).[1] The defendant claims on appeal that (1) his right to effective assistance of standby counsel was violated; (2) his right to due process was violated when the trial court discussed on the record a prior acquittal of the defendant in another unrelated matter; (3) the court erred in failing sua sponte to strike a question posed to him by the prosecutor on cross-examination; (4) his right to due process was violated because the jury panel did not represent a fair cross section of the community; (5) his right to due process was violated when the court denied his request to use during closing argument an exhibit marked for identification only; (6) there was insufficient evidence to support his conviction; (7) the court erred in failing to include in its jury instructions any reference to a Department of Correction directive concerning employee conduct; (8) the sentence imposed was vindictive; (9) he was denied his right to due process when he was not provided copies of the state's evidence until the first day of trial; and (10) he was denied due process and his right to confrontation when the court ordered his standby counsel to subpoena from the Department of Correction an unedited version of a videotape only after the state had introduced as a full exhibit an edited portion of the tape. We affirm the judgment of the trial court.

The jury reasonably could have found the following facts. On May 27, 2011, the defendant was incarcerated at Northern Correctional Institution in Somers (Northern) in cell number 221. On that day, a nursing supervisor at Northern noticed an odor coming from the defendant's cell. She noted that the defendant had a history of severe lower leg infections and had continued to refuse medication, dressing changes and medical appointments. At approximately 7:30 p.m., Captain Bryan Rae, a shift commander who had authority to transfer inmates, ordered that the defendant be moved to the infirmary. Correction Officer Michael Torkington, who was in uniform, was assigned to assist in the move; he was to provide the defendant with plastic bags so that the defendant could take his personal belongings with him to the infirmary. As Torkington opened the trap on the defendant's cell door to pass him the plastic bags, the defendant put his hand through the door and, from a Styrofoam cup, flung liquid and fecal matter at Torkington, hitting him in the chest.

Prior to trial, the court, *Solomon, J.*, granted the defendant's motion to represent himself and appointed Attorney Douglas Ovian as standby counsel. Following trial, the defendant was found guilty of assault of a correction officer and sentenced to eight years incarcer-

ation consecutive to his current term of life without parole. This appeal followed.

Several of the defendant's claims lack an adequate record for review. His claim of ineffective assistance of counsel cannot be reviewed on direct appeal on the basis of the record before us. See *State* v. *Crespo*, 246 Conn. 665, 687–88, 718 A.2d 925 (1998) (ineffective assistance of counsel claims generally must be raised by way of habeas corpus, not on direct appeal, because of need for full evidentiary record), cert. denied, 525 U.S. 1125, 119 S. Ct. 911, 142 L. Ed. 2d 909 (1999).[2] His claim that the jury panel did not represent a fair cross section of the community lacks a record regarding the demographic composition of the Tolland Judicial District and the existence of any systematic exclusion of a distinctive group. See *State* v. *Tillman*, 220 Conn. 487, 496, 600 A.2d 738 (1991) (defendant's burden to make adequate record to support challenge to jury array and offer sufficient evidence to satisfy *Duren*[3] test; challenge to jury array will fail if no evidence presented to trial court), cert. denied, 505 U.S. 1207, 112 S. Ct. 3000, 120 L. Ed. 2d 876 (1992).

Of the remaining claims, only some are adequately briefed.[4] The defendant claims that his right to due process was violated when the court denied his request to use during closing argument a DVD of his cell area, recorded during the hours preceding the incident, although the court had allowed the state to introduce as a full exhibit an edited version of the video,[5] which showed the specific incident in issue. The longer video was never admitted as a full exhibit. The court, however, extended the defendant some latitude during closing argument to discuss the contents of the video. It was not improper for the court not to permit the defendant to use exhibit N for identification during closing argument. Because the DVD in question was never admitted into evidence as a full exhibit, the jury could not properly consider it in reaching its verdict. See *State* v. *Stuart*, 113 Conn. App. 541, 549–54, 967 A.2d 532 (error to submit to jury exhibits marked for identification only), cert. denied, 293 Conn. 922, 980 A.2d 914 (2009). Accordingly, the court did not violate the defendant's constitutional rights by not permitting him to show the DVD during his closing argument. See *State* v. *Gamble*, 119 Conn. App. 287, 303, 987 A.2d 1049 (condition of defendant's hand not part of evidence; thus, not proper subject of defendant's closing argument), cert. denied, 295 Conn. 915, 990 A.2d 867 (2010); see also *State* v. *Sweeney*, 104 Conn. App. 582, 598, 935 A.2d 178 (2007) ("[C]ounsel may comment [in closing argument] upon facts properly in evidence and upon reasonable inferences to be drawn from them. . . . Counsel may not, however, comment on or suggest [in closing argument] an inference from facts not in evidence." [Emphasis omitted; internal quotation marks omitted.]).

The defendant also claims that he did not receive the case file, specifically the security footage, until the first day of trial. He argues that the video was edited and was not the original unedited video. We have viewed the security footage, of more than twenty hours, in its entirety. It depicted: from approximately 3 p.m. to 10 p.m. on May 27, 2011, the west south side of Northern, which contained the defendant's cell; from approximately 3 p.m. to 11 p.m. on May 27, 2011, the medical cell in which the defendant was placed; and from approximately 3 p.m. to 11 p.m. the same medical cell on May 29, 2011. We cannot discern how seeing this footage of the hours before and after the incident could have materially assisted in preparing the defense, and thus conclude that the defendant suffered no prejudice by being provided the footage of the hours surrounding the incident at the time of trial rather than prior to trial.[6]

The defendant's claim that his due process rights were violated when the court mentioned a prior acquittal of him that occurred in a previous, unrelated matter is unpreserved, and the defendant has not demonstrated a violation of a constitutional right. See *State* v. *Elson*, 311 Conn. 726, 91 A.3d 862 (2014) (affirmative request in main brief for *Golding*[7] review of unpreserved claim not required as long as record is adequate for review and defendant demonstrates violation of fundamental constitutional right). The record nevertheless reveals that the prior acquittal was mentioned only outside the presence of the jury and for the purpose of assessing his ability to represent himself in light of his past experience with self-representation, which resulted, in that instance, in acquittal. The defendant has not established a cognizable due process violation. See *State* v. *Tatum*, 219 Conn. 721, 742, 595 A.2d 322 (1991) (due process right to fair trial not violated where court's comments at issue occurred outside presence of jury because "any misconduct that occurred outside the presence of the jury could not possibly have had an impact on its verdict").

The defendant further argues that during cross-examination, the prosecutor asked him an improper question regarding his prior acquittal and that the court erred in failing sua sponte to strike the question. During direct examination, the defendant opened the door by testifying that in his twenty-three years in jail this was "the first time I've ever come to court on this type of charge." The court permitted the prosecutor to conduct a limited inquiry as to the defendant's history regarding prior threats and assaults and, on cross-examination, the prosecutor did so. The prosecutor asked the defendant if he had been punished for assaults or threats on certain dates. On redirect, the defendant explained the incidents in some detail. The question[8] that the defendant claims to have been improper, was never asked.

The defendant next argues that the evidence was

insufficient to support his conviction because Torkington was not acting in the performance of his duties, and Torkington had been without authority to order the defendant to be moved to the infirmary.[9] The jury reasonably could have found that Torkington was acting in the performance of his duties on the basis of testimony that Torkington was on duty and in uniform and that Captain Rae, who had authority to transfer inmates, made the decision to have the defendant moved to the infirmary and gave Torkington the task of providing the defendant with plastic bags so that the defendant could take his personal belongings with him to the infirmary.

We have reviewed the defendant's claim that the sentence imposed was vindictive and we find it to be without merit.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] General Statutes § 53a-167c (a) (5) provides in relevant part: "A person is guilty of assault of public safety . . . personnel when, with intent to prevent a reasonably identifiable . . . employee of the Department of Correction . . . from performing his or her duties, and while such . . . employee . . . is acting in the performance of his or her duties . . . (5) such person throws or hurls, or causes to be thrown or hurled, any bodily fluid including, but not limited to . . . feces . . . at such . . . employee . . . ."

[2] Additionally, having waived his right to counsel, the defendant no longer had a constitutional right to effective counsel. See, e.g., *State* v. *Oliphant*, 47 Conn. App. 271, 280–81, 702 A.2d 1206, cert. denied, 244 Conn. 904, 714 A.2d 3 (1998).

[3] See *Duren* v. *Missouri*, 439 U.S. 357, 364, 99 S. Ct. 664, 58 L. Ed. 2d 579 (1979).

[4] We do not review claims that are inadequately briefed. "[W]e are not required to review issues that have been improperly presented to this court through an inadequate brief. . . . Analysis, rather than mere abstract assertion, is required in order to avoid abandoning an issue by failure to brief the issue properly." (Internal quotation marks omitted.) *State* v. *Scott*, 83 Conn. App. 724, 731, 851 A.2d 353 (2004).

[5] State's exhibit 1 is a recording from the NiceVision camera system at Northern depicting the time period of the incident at issue.

[6] The record shows that the defendant had viewed, prior to trial, footage of the actual event forming the basis of the charge and which *was* introduced as a full exhibit by the state.

[7] See *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989); see also *In re Yasiel R.*, 317 Conn. 773, 781, 120 A.3d 1188 (2013) (modifying third condition of *Golding*).

[8] The defendant contends that the prosecutor asked: "Isn't it true, Mr. Day, that you brutally beat your cellmate so bad that he's left paralyzed in a convalescent home in Bridgeport?" This question was never asked of the defendant.

[9] When reviewing sufficiency of the evidence claims, "First, we construe the evidence in the light most favorable to sustaining the verdict. Second, we determine whether upon the facts so construed and the inferences reasonably drawn therefrom the jury reasonably could have concluded that the cumulative force of the evidence established guilt beyond a reasonable doubt." (Internal quotation marks omitted.) *State* v. *Grant*, 219 Conn. 596, 599–600, 594 A.2d 459 (1991).